1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                          DISTRICT OF NEVADA

10                                  * * *

11   UNITED STATES OF AMERICA,              Case No. 2:15-cv-01743-MMD-NJK

12                          Plaintiff,                    ORDER
         v.
13                                          (Pl.'s Motions to Exclude – ECF Nos. 128,
     400 ACRES OF LAND, more or less,        129, 130, 133, 134, 135; Defs.' Motion to
14   situate in Lincoln County, State of Nevada;   Preserve Issue for Jury – ECF No. 132)
     and JESSIE J. COX, et al.,
15
                            Defendants.
16

17

18   **I.      INTRODUCTION**

19          In this eminent domain action, the Court has found that the United States' taking of

20   property for the purpose of operating the Nevada Test and Training Range ("NTTR"), a

21   military test and training facility at Nellis Air Force Base, is for a congressionally authorized

22   public use. (ECF No. 111 at 1.) Accordingly, the only issue that remains is just

23   compensation. In response to the United States' request over Defendants Sheahan

24   Landowners' ("Defendants" or "Landowners") objection, the Court stayed discovery

25   pending resolution of threshold evidentiary motions. (ECF No. 125 at 3.) The United States

26   filed six motions to exclude evidence. (ECF Nos. 128, 129, 130, 133, 134, 135.)

27   Landowners filed a motion asking the Court to "preserve the special purpose finding for

28   the jury and allow the jury to consider any valuation methodology that is just and equitable"

1  ("Defendants' Motion")[1] (ECF No. 132 at 1.) The Court has reviewed the parties'

2  responses (ECF Nos. 142, 145, 146, 147, 148, 149) and replies (ECF Nos. 170, 171, 172,

3  173, 174, 175) in connection with these motions.[2] The Court heard argument on three of

4  the United States' motions on September 22, 2017. (ECF No. 237.) Because of the broad

5  scope of Defendants' Motion, the Court finds it logical to address Defendants' Motion first

6  before addressing two of the United States' motions. The remaining motions will be

7  addressed in a separate order.

8  **II.    RELEVANT BACKGROUND**

9       The United States filed a Complaint and Declaration of Taking on September 10,

10  2015, to acquire 400 acres of property located within the NTTR consisting of a group of

11  patented and unpatented mining claims known as the Groom Mine ("the Property"). (ECF

12  No. 129; *see also* ECF No. 1 (Complaint); ECF No. 2 (Declaration of Taking).) The United

13  States deposited the estimated compensation to the Court in the amount of $1,200,000.00

14  (ECF No. 10 at 1), and the funds were released to Landowners on March 9, 2016 (ECF

15  No. 85 at 1-2). On September 16, 2015, the Court granted the United States immediate

16  possession of the Property. (ECF No. 14 at 1.) Landowners filed their Answer on

17  November 6, 2015. (ECF No. 53.) On October 5, 2016, the Court determined that the

18  "taking is for a congressionally authorized public use identified in the United States'

19  Complaint [ECF No. 1-3], and is legally valid." (ECF No. 111 at 1.) As a result, the amount

20  of just compensation for the United States' condemnation is the sole remaining issue.

21       The Property is in the Groom Lake Valley about 7 miles from Area 51. (ECF No.

22  132 at 5.) The Property is the only privately owned property that has an unobstructed view

23  ///

24       [1]Landowners asserted countermotions in response to several of the United States'
motions to exclude Landowners' expert opinions. (ECF Nos. 146, 147, 148, 149.) As the

25  Court explained during the September 22 hearing, these filings fail to comply with LR IC
2-2(b) and will not be considered as separate countermotions. The Court will nevertheless

26  consider the points raised in these countermotions in addressing the United States'
motions.

27
       [2]Defendants Christine Wheatley Tanis and Mark Tanis joined Landowners'

28  responses to the United States' motions. (ECF Nos. 162, 163, 164, 165, 166, 167.)

of Area 51. (*Id.* at 16.) Landowners' family has owned the Property since about 1885, long before the United States began to use the nearby property. (*Id.* at 4-5.)

**III.    LAWS GOVERNING CONDEMNATION**

"The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation." *United States v. Miller*, 317 U.S. 369, 373 (1943). In the event of a taking, "[t]he owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." *Id.* As the Supreme Court reiterated in *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235-36 (2003), the Fifth Amendment's requirement of "'just compensation' . . . is measured by the property owner's loss rather than the government's gain." "[T]he landowner is entitled to a value based on the use to which the condemned property is being put or may be put in the reasonably near future." *United States v. 100 Acres of Land,* 468 F.2d 1261, 1266 (9th Cir. 1972). The issue of the condemned property's highest and best use is for the trier of fact to decide. *Id.*

Fed. R. Civ. P. 71.1 governs eminent domain proceedings. "In an action involving eminent domain under federal law, the court tries all issues, including compensation, except when compensation must be determined . . . by a jury when a party demands one." Fed. R. Civ. P. 71.1(h)(1). Defendants have timely demanded a jury to resolve the issue of just compensation. (*See, e.g.*, ECF No. 29 at 1-2.)

**IV.    DEFENDANTS' MOTION (ECF NO. 132)**

Defendants' Motion asserts that because the Property is a "special purpose" property, the Court should not apply a strict valuation methodology but should "preserve the special purpose finding for the jury and allow the jury to consider any valuation methodology that is just and equitable." (ECF No. 132 at 27-28.) The United States asks the Court to deny Defendants' Motion on several grounds, including that the requested relief is vague and overbroad, that the question of whether a proposed valuation methodology can be considered under Rule 71.1(h) is an issue for the Court, and that a ruling that the issue of whether the Property is a special purpose property is meaningless

without a determination by the Court that normal market value evidence is justified.[3] (ECF No. 150 at 1-2.) In response, Landowners dispute the United States' contention that they are asking for a "blanket" ruling. (ECF No. 168 at 9 n.24.)

The Court agrees with the United States that the requested relief is overbroad and does not reflect the role of the Court in serving its gatekeeping functions. Landowners explain that they are asking the Court to permit the jury to decide "a valuation approach that is 'just and equitable' and arrives at just compensation." (*Id.*) To the extent Landowners ask the Court to allow the jury to decide which valuation formula is reliable, this request ignores the Court's role in screening expert opinions under Fed. R. Evid. 702. Any expert opinions as to the proper valuation methodology must persuade the Court that the methodology is reliable, regardless of whether the methodology is an accepted fair value method or even a method based on a finding that the Property is a "special purpose" property. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) ("[T]he trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline'") (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). Even accepting that, as Landowners argue, "the valuation experts may have to bend these valuation methodologies or use a different valuation methodology" (ECF No. 168 at 10), any modified valuation methodologies would nevertheless have to be evaluated by the Court for reliability. For example, the Court would have to evaluate whether the expert opinion is based on reliable methods and whether evidence supporting such methodology is too speculative and should be excluded. *See, e.g., United States v. 99.66 Acres of Land,* 970 F.2d 651, 655-58 (9th Cir. 1992) (affirming the district court's decision to exclude evidence of individual lot sales and evidence of fair market value premised on the lost sale method where the district court found that the development of the tract as a subdivision had not progressed "to the stage where there was a realistic market for lot sales").

---

[3]The United States also argues that no federal eminent domain case law supports Landowners' definition of "special purpose property." (ECF No. 150 at 7.)

1    Landowners may have valid reasons for presenting valuation methods that are not

2    based solely on fair market value, and the United States may object. But the relief

3    requested—that the Court "preserve the special purpose finding for the jury and allow the

4    jury to consider any valuation methodology that is just and equitable" (ECF No. 132 at 27-

5    28)—is sweeping. Landowners essentially ask the Court to abdicate its responsibility of

6    ensuring whether a proposed valuation method is reliable and not speculative. For these

7    reasons, Defendants' Motion is denied.

## V.     MOTION TO EXCLUDE EVIDENCE RELATING TO THE CAUSE OF THE MILL FIRE (ECF No. 128)

10    The United States argues that the report and testimony of Landowners' proffered

11    expert Richard A. Ortiz as to the cause of a fire that destroyed the Groom Mine mill building

12    in 1954 is irrelevant and should be excluded. (ECF No. 128 at 1-2.) Ortiz opined that the

13    mill building "was struck outside to inside by some large and heavy airborne object." (ECF

14    No. 128-1 at 36.) The United States contends that Ortiz's suggestion that the United States

15    caused the fire is not relevant to the only issue in this case—just compensation—and

16    would serve no purpose other than to prejudice the United States. (ECF No. 128 at 2-3.)

17    Landowners counter that because the United States readily admitted that it will seek to

18    admit "evidence regarding the lack of any commercial mining activity at the subject

19    property since the 1950s," the cause of the mill's destruction is relevant to explain the

20    reason for the lack of commercial mining activities.[4] (ECF No. 142 at 8 (citing ECF No.

21    128 at 9-10).)

22    Expert testimony "must still be relevant; '[e]xpert testimony which does not relate to

23    any issue in the case is not relevant and, ergo, non-helpful.'" *United States v. 87.98 Acres*

24    *of Land,* 530 F.3d 899, 904 (9th Cir. 2008).

25    The Court agrees with the United States that the cause of the fire that destroyed

26    the mill building is not relevant to the single remaining issue of just compensation.

27

28    ⁴Landowners explain the significance of a mill in Defendants' Motion—"[a] mill is a critical component to a mine as it sorts the valuable minerals for processing and sorting." (ECF No. 132 at 10 n.7.)

1  Landowners argue that absent evidence of the mill building's destruction, the United

2  States may suggest that the lack of commercial mining activities "is indicative of the

3  quantity and quality of the minerals on the property." (ECF No. 142 at 9-10.) First and

4  foremost, what the United States seeks to exclude is Ortiz's opinion as to the cause of the

5  fire, not that a fire occurred and caused the destruction of the mill building. As the United

6  States aptly points out, "[t]he *existence* of such preexisting conditions is relevant; the

7  *cause* of preexisting conditions is not." (ECF No. 128 at 9.) That a mill building existed on

8  the Property and was destroyed in a fire is relevant, but the cause of that fire is not.

9  Precluding evidence of the cause of the fire would not affect Defendant's ability to present

10 evidence of the existence of the mill building before the fire. Nor would it hamstring

11 Defendant's ability to respond if the United States were to offer as evidence the lack of

12 commercial mining activities post-1954.

13        Moreover, Ortiz's proposed testimony does not pass the prejudice and confusion

14 test of Fed. R. Evid. 403. Ortiz's suggestion that the United States' activities caused the

15 fire would mislead or confuse the jury in their determination of value. The jury may confuse

16 damages for the destruction of the mill building with just compensation for the taking or

17 may give the cause of the destruction of the mill building undue effect in determining just

18 compensation.

19        As for the argument that the Ortiz opinion may be relevant if the United States

20 "opens the door," the Court declines to address this argument at this time. This issue may

21 be more crystallized in the context of trial, but at this point, it is not clear how the door

22 would be opened if the United States does not offer evidence to dispute the cause of the

23 fire.

24        In sum, the Court grants the United States' motion to exclude Ortiz's report and

25 opinion as to the cause of the fire that destroyed the mill building.

26 ///

27 ///

28 ///

6

## VI. MOTION TO EXCLUDE CONSIDERATION OF VALUE TO THE GOVERNMENT (ECF No. 129)

The United States seek to exclude expert opinions that relate to or consider value to the government in determining just compensation. In particular, the United States contends that three expert witnesses' reports rely on or reference this type of value: Dr. Terrence M. Clauretie's third report ("Clauretie III") (ECF No. 129-1); Clarion Associates, Inc.'s second report ("Clarion II") (ECF No. 129-2); and the DiFederico Group's report ("DiFederico") (ECF No. 129-3). The United States argues that Clauretie III contains "calculation[s] of the burden the United States will be relieved of by taking the landowners' property;" that Clarion II considers a "premium paid by the Air Force to acquire land adjacent to Air [Force] bases;" and that DiFederico inappropriately relies upon two Air Force acquisitions of property adjacent to other military bases as comparable sales. (ECF No. 129 at 2-3.) The United States argues that these opinions improperly rely on value to the United States in determining market value of the Property for purposes of just compensation. (*Id.*) Landowners acknowledge that value to the government cannot be considered in determining just compensation (and that Clauretie III is thus inadmissible), but they challenge the United States' characterization of the other two expert opinions. (ECF No. 145 at 2-3.)

### A. CLAURETIE III

Landowners admit that Clauretie III is not admissible but contend that it "was prepared only as an anticipatory rebuttal." (ECF No. 145 at 11-12.) Such concession warrants granting the United States' motion with respect to Clauretie III. Whether that report may be used as rebuttal evidence is not an issue that the Court need consider at this time.

### B. CLARION II

Clarion II report states that it is appropriate to ascertain whether the United States "has paid a premium above the private marketplace price in negotiated acquisitions of sites adjacent to military facilities." (ECF No. 129-1 at 16-17). If the United States has paid

such a premium, Clarion II reasons that it would support an "upward adjustment to the value in the final determination of the market value" of the Property. (*Id.* at 16.) Clarion II analyzed two Air Force acquisitions of properties adjacent to the Creech Air Force Base in Indian Springs, Nevada and the Tinker Air Force Base in Oklahoma City, Oklahoma ("Air Force Properties") and found that "the Air Force likely paid a substantial location premium to acquire the adjacent properties." (*Id.* at 11-13.) Clarion II opined that "[i]t is likely that there were other considerations involved in the Creech and Tinker purchases that resulted in prices substantially above the market prices." (*Id.* at 12.) Accordingly, they used "the low end of the indicated range of suggested locational premiums paid, and . . . included a 25% locational premium when considering the location of the Groom Mine overlooking Area 51." (*Id.*)

The United States argues that Clarion II is inadmissible because it "applies a premium . . . based solely on [the Property's] acquisition by the United States" (ECF No. 129 at 10), and this type of "premium above market value" (ECF No. 170 at 2) was rejected in *City of New York v. Sage*, 239 U.S. 57 (1915). Landowners characterize Clarion II as an opinion "that the Air Force, which is a market participant, will pay more for properties located adjacent to military bases." (ECF No. 145 at 3.) They argue that *City of New York* does not apply to the reports here. (*Id.* at 9-10.)

In *City of New York*, the commissioners appointed in the condemnation proceedings involving the taking of land for a reservoir determined just compensation not based on "a market value . . . that it would have brought . . . at a fair sale," but based on "the value of the reservoir as a whole and . . . what they thought [constituted] a fair proportion of the increase, over and above the market value of the lot, to the owner of the land." 239 U.S. at 60-61. The Supreme Court found this approach to be wrong. As the Court explained, "adaptability to the purposes for which the land could be used most profitably was to be considered . . . . But it is to be considered only so far as the public would have considered it if the land had been offered for sale in the absence of the city's exercise of the power of eminent domain." *Id.* The Court also explained:

But what the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have given for it in fact,-not what a tribunal at a later date may think a purchaser would have been wise to give, nor a proportion of the advance due to its union with other lots. The city is not to be made to pay for any part of what it has added to the land by thus uniting it with other lots, if that union would not have been practicable or have been attempted except by the intervention of eminent domain. Any rise in value before the taking, not caused by the expectation of that event, is to be allowed, but we repeat, it must be a rise in what a purchaser might be expected to give.

(*Id.*) Thus, the Court found fault with the commissioners' determination of value because they considered value of the reservoir to the condemning agency as a whole and then apportioned the resulting increase in fair market value to the landowner.

Clarion II does not add the type of increase—based on value of the completed project as a whole—that the Supreme Court found to be wrong in *City of New York*. The Court agrees with Landowners that *City of New York* does not apply.

Whether evidence of value is relevant and admissible depends on the basis for the value. If value is based on proximity to an improvement, evidence of that value is admissible. *See Miller*, 317 U.S. at 376-77. In *Miller,* the Supreme Court contemplated situations where lands adjacent to the condemned project but not within the scope of the condemnation may enjoy "the valued added in the meantime by the proximity of the improvement." *Id.* at 377. In those situations, the Court observed that the landowners "ought not [be] deprive[d] . . . of the valued added . . . by the proximity." (*Id.*) Thus, the Court did not categorically exclude all increase in value due to the lands being located next to property condemned by the government. However, if value is based on the likelihood that the land will be condemned because it is adjacent to other condemned land, evidence of that value is inadmissible. *Id.* ("[T]he Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities."); *City of New York*, 239 U.S. at 61 ("Any rise in value before the taking, not caused by the expectation of that event, is to be allowed . . . ."). Additionally, if value is based on the joinder of previously separate parcels (that would not have been

9

joined but for the condemnation), evidence of that value is inadmissible. *City of New York*, 239 U.S. at 61. ("The city is not to be made to pay for any part of what it has added to the land by thus uniting it with other lots, if that union would not have been practicable or have been attempted except by the intervention of eminent domain.")

Here, Clarion II relies on evidence that the United States has paid a premium for land adjacent to military facilities when they acquired the Air Force Properties. (ECF No. 129-2 at 11.) The basis for the premium is unclear, in part because Clarion was unable to obtain appraisals from those properties. (*Id.* at 12.) Evidence of the premium would be admissible, though, if it were based on value created by proximity to military facilities, such as an increase in the number of visitors to the area. *Miller*, 317 U.S. at 376-77.

The United States contend that the premium is "based solely on . . . acquisition by the United States" (ECF No. 129 at 10), but this is far from clear. The report itself indicates that factors other than the taking likely drove the premium: "As indicated above, it is likely that there were other considerations involved in the sale that resulted in prices substantially above market prices. Items such as loss of business income to the prior owners of the parcels may have been factors in the negotiations." (ECF No. 129-2 at 35.)

Because it is not clear to the Court that Clarion II added a premium based solely on value to the government, the Court denies the United States' motion.

**C.    DIFEDERICO**

Generally, "[t]he price paid by a condemnor in settlement of condemnation proceedings or in anticipation of such proceedings is inadmissible to establish value of comparable land." *United States v. 10.48 Acres of Land,* 621 F.2d 338, 339 (9th Cir. 1980). However, the Ninth Circuit has found two recognized exceptions to this general rule: "cases of voluntary sale . . . or where 'the fact that parties were condemnor and condemnee either was not known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings." *Id.* (internal citation omitted) (quoting *Slattery Co. v. United States,* 231 F.2d 37, 41 (5th Cir. 1956)). Indeed, ///

1    the United States acknowledges that "consideration of sales to the government is not
2    categorically prohibited." (ECF No. 129 at 13.)

3         The United States argues that DiFederico is effectively using value to the
4    government to determine just compensation because DiFederico relies upon two Air Force
5    acquisitions (the same two Clarion II relied upon) as comparable sales solely because of
6    their purchase by the U.S. Air Force, not because they fit his criteria for comparable sales.
7    (ECF No. 129 at 11.) In particular, the United States asserts that DiFederico defines
8    comparable sales as "vacant land sales with tourism commercial potential" but the Air
9    Force Properties are improved properties. (*Id.* at 13.) Landowners respond that although
10   DiFederico considered the sale of the two Air Force Properties, he ultimately chose not to
11   use them as his "enumerated comparable sales." (ECF No. 145 at 4.)

12        Without the benefit of DiFederico's full reasoning for why he considered the Air
13   Force Properties, the Court cannot find, as the United States argues, that DiFederico
14   utilizes these properties solely because they reflect value to the Air Force.

15        In sum, the Court grants the United States' motion with respect to Clauretie III, but
16   denies it with respect to Clarion II and DiFederico.

17   **VII.    CONCLUSION**

18        The Court notes that the parties made several arguments and cited to several cases
19   not discussed above. The Court has reviewed these arguments and cases and determines
20   that they do not warrant discussion as they do not affect the outcome of the motions
21   addressed in this Order.

22        It is therefore ordered that the United States' motion to exclude evidence relating
23   to the cause of the mill building fire (ECF No. 128) is granted.

24        It is further ordered that the United States' motion to exclude consideration of value
25   to the government (ECF No. 129) is granted in part and denied in part. It is granted with
26   respect to Clauretie III and denied with respect to Clarion II and DiFederico.

27   ///

28   ///

11

It is further ordered that Defendants' motion to preserve issues for the jury (ECF No. 132) is denied.

DATED THIS 29th day of September 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE