UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>400 ACRES OF LAND, more or less, situate in Lincoln County, State of Nevada; and JESSIE J. COX, et al.,<br><br>Defendants. | Case No. 2:15-cv-01743-MMD-NJK<br><br>ORDER<br><br>(Defs.' Motion for Reconsideration – ECF No. 205) |

## I. INTRODUCTION

Before the Court is Defendants' motion for reconsideration ("Motion") (ECF No. 205) of the Court's discovery order dated March 10, 2017 (ECF No. 191). The Court has reviewed the United States' response (ECF No. 212). The Court also heard argument on the Motion on November 6, 2017. (ECF No. 267.) For the reasons discussed below, the Motion is denied.

## II. RELEVANT BACKGROUND

The United States filed a Complaint and Declaration of Taking on September 10, 2015, to acquire 400 acres of property located within the Nevada Test and Training Range ("NTTR"), a military test and training facility at Nellis Air Force Base, consisting of a group of patented and unpatented mining claims known as the Groom Mine ("the Property"). (ECF No. 129; *see also* ECF No. 1 (Complaint); ECF No. 2 (Declaration of Taking).) The United States deposited the estimated compensation to the Court in the amount of $1,200,000 (ECF No. 10 at 1), and the funds were released to Landowners on March 9,

1 | 2016 (ECF No. 85 at 1-2). On September 16, 2015, the Court granted the United States immediate possession of the Property. (ECF No. 14 at 1.) Landowners filed their Answer on November 6, 2015. (ECF No. 53.) On October 5, 2016, the Court determined that the "taking is for a congressionally authorized public use identified in the United States' Complaint [ECF No. 1-3], and is legally valid." (ECF No. 111 at 1.) As a result, the amount of just compensation for the United States' condemnation is the sole remaining issue.

The Property is in the Groom Lake Valley about seven miles from Area 51. (ECF No. 132 at 5.) The Property is the only privately owned property that has an unobstructed view of Area 51. (*Id.* at 16.) Landowners' family has owned the Property since about 1885, long before the United States began to use the nearby property. (*Id.* at 4-5.)

Landowners moved to compel entry onto the Property to conduct testing and drilling of mineral deposits (ECF No. 131), and the United States filed a response (ECF No. 151). Landowners then filed a reply (ECF No. 169), and the United States filed a sur-reply with leave of the Court (ECF No. 186). The Magistrate Judge issued an order denying the Landowners' motion to compel. (ECF No. 191.) Landowners filed an Objection (ECF No. 205) to the Magistrate Judge's order, which this Court now considers as a motion for reconsideration. The United States filed a response to the Landowners' motion for reconsideration (ECF No. 212), and the Landowners filed a reply (ECF No. 215). The Court struck Defendants' reply during the hearing on November 6, 2017. (ECF No. 267.)

## III.  LEGAL STANDARD

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3–1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1–3, when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

This standard of review is significantly deferential to the initial ruling. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (alteration in original) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The reviewing court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (citation omitted).

## IV. DISCUSSION

### A. Relevance

Landowners first argue that the Magistrate Judge erred by concluding that Landowners failed to meaningfully address one of the United States' arguments that drilling results would not be relevant. (ECF No. 205 at 8-9.) Before the Magistrate Judge, the United States argued that there is no market for the mineral deposits, no matter their extent, because their quality is too low to justify the expense of extraction. (ECF No. 151 at 21-22.) Drilling results verifying the amount of mineral deposits would therefore be irrelevant. Landowners responded that the quality of the mineral deposits could be "much higher" than even their own expert concluded, though they did not expressly state that findings of higher quality would attract market interest. (ECF No. 169 at 15 (emphasis omitted).)

The Court does not find that the Magistrate Judge clearly erred. Landowners suppose that the quality of the mineral deposits is much higher than even their own expert predicted on the basis of tenuous evidence—historical smelter receipts. These receipts ostensibly "show that the ounces of silver per ton historically produced from the Mine were much higher than what [both sides' experts] have estimated." (ECF No. 169 at 15 n.6.) There are a number of reasons why the historical smelter receipts do not necessarily reflect the overall quality of the deposits, however. First, smelter receipts reflect information about samples that are essentially cherry-picked for their high quality, as explained by the United States at the hearing. (ECF No. 267.) Landowners did not contest this characterization. (*Id.*) Second, the United States' expert considered the historical smelter receipts and concluded, given all the information available to him, that the quality

of the deposits is low relative to the quality shown on the smelter receipts. (ECF No. 180-1 at 17; *see* ECF No. 169 at 15.) The Landowners' expert reached almost the same conclusion, actually determining that the quality was lower (0.69 troy ounces of silver per ton of ore) than what the United States' expert determined (0.8 troy ounces of silver per ton of ore). (ECF No. 267; ECF No. 151 at 8.) Third, the experts did not state in their reports that they needed more information to determine the quality of the deposits, which Landowners conceded at the hearing. (ECF No. 267.)

Even if the quality of the deposits were high enough to make their amount relevant, there are a number of other factors that influence market value and whether mining would be cost-effective. For instance, "location, commodity, geology, and deposit type" affect "[t]he level of market interest in exploring a given mineral property—also called exploration draw." (ECF No. 151 at 2 (emphasis omitted).) The United States suggests that these factors detract from market interest in the Property (*see id.*), and Landowners did not address how the results of drilling would militate against these factors at the hearing (ECF No. 267). Neither did Landowners identify the point at which the quantity or quality of the deposits would become high enough to outweigh these factors. (*Id.*)

Landowners additionally argued that mining properties are sometimes purchased even when mining is not cost-effective (ECF No. 169 at 16), but this argument actually mitigates the relevance of core drilling results. If mining properties attract market interest regardless of whether they are cost-effective to mine, information that would predict cost-effectiveness—the results of core drilling, for instance—amounts to only one factor in market participants' larger calculus.

**B.     Adverse Inference**

Landowners next argue that the Magistrate Judge should have granted their request for a jury instruction of an adverse inference. (ECF No. 205 at 10 (citing ECF No. 169 at 16-19).) Landowners base their request on the premise that the United States engaged in spoliation by making use of the Property it condemned and then relying on that use to oppose Landowner's request for entry. (ECF No. 160 at 16-19.) However,

4

leaving the Property unused would defeat the purpose of the condemnation. The Court does not find that the Magistrate Judge erred in rejecting the argument that the United States engaged in spoliation merely by using the property it condemned.

### C. Expert Findings

Landowners further argue that the Magistrate Judge erred by finding that Nexus Geos LLC ("NGL") "stated that [its] findings do not take into account the likelihood of a market participant undertaking additional mining on the subject property." (ECF No. 205 at 11 (quoting ECF No. 191 at 4).) Landowners' primary objection appears to be that NGL did not state this expressly. (*See id.*) Regardless, it is apparent that NGL did not consider the likelihood of a market participant undertaking additional mining on the Property. (*See* ECF No. 130-1.) The Court does not find that the Magistrate Judge clearly erred on this basis.

### D. Estimated Length of Relocation

Landowners further argue that the Magistrate Judge disregarded evidence that the United States' estimate of thirty days for relocation was inaccurate. (ECF No. 205 at 12.) Landowners contend that this is material because a lengthy relocation period would supposedly reduce the United States' burden of accommodating civilian entry on the Property. (*See id.* at 13.) If civilians would already be on the Property for relocation purposes, then presumably more civilians could be accommodated for drilling purposes. The United States counters that this issue was not properly before the Court, estimates of how long relocation would take were revised, and relocation benefits are an administrative matter. (ECF No. 212 at 19-20.) If the Magistrate Judge disregarded the parties' dispute about the length of relocation, it was warranted. The length of relocation has relatively little bearing on the United States' burden because "the costs involved to allow any private access, even for a week, could easily run into millions of dollars." (ECF No. 152 at 4.) In light of this and other burdens the United States would bear in accommodating Landowners' request for entry, detailed *infra*, the Court finds that the Magistrate Judge did
///

1 not clearly err in declining to entertain Landowners' attempts to dispute the length of
2 relocation.

    E.      **Burden to United States**

4 Landowners further argue that the Magistrate Judge erred in balancing the costs
5 and harm to national security that would result if Landowners were permitted to access
6 the Property against Landowners' interest in verifying the quality and quantity of the
7 mineral deposits. (ECF No. 205 at 14-15.) Landowners contend that their interest in
8 gathering additional information about the deposits categorically outweighs national
9 security interests, no matter their gravity, citing the Ninth Circuit Court of Appeals' recent
10 decision in *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) (subsequent history
11 omitted). The holding in *Washington* is not so extreme. In that case, the State of
12 Washington sued the United States and high-ranking officials (including the President)
13 alleging that an executive order banning entry into the United States of individuals from
14 seven countries for 90 days violated various federal statutes and provisions of the United
15 States Constitution. *Id.* at 1157. The trial court granted the plaintiff's request for a
16 temporary restraining order, and the United States sought an emergency stay, including
17 an immediate stay while its emergency stay motion was under consideration. *Id.* The Ninth
18 Circuit denied the United States' emergency motion. *Id.* at 1169. In considering
19 reviewability of the executive order, the court cited to numerous cases confirming that
20 courts are empowered to protect constitutional guarantees against encroachment in the
21 name of national security. *Id.* at 1161-62. The court did not state or suggest that national
22 security interests are always subordinate to individuals' constitutionally protected
23 interests. *See id.*

Furthermore, the Court does not find clear error in the Magistrate Judge's
qualification of the burden the United States would bear if the Landowners were permitted
to conduct testing and drilling. The Magistrate Judge found that the "burden and expense
of the discovery sought appear extraordinarily high." (ECF No. 191 at 4.) The Magistrate
Judge's determination was based on an affidavit from Patricia J. Zarodkiewicz, the

Administrative Assistant to the Secretary of the Air Force, which asserted that the United States "must cancel classified national defense missions occurring within the NTTR and its remote operating locations whenever private parties are present at the [subject] property." (ECF No. 191 at 4 (alteration in original) (quoting ECF No. 151 at 4).) Zarodkiewicz also asserted that the requested entry is "absolutely infeasible for national security purposes," would constitute "an unprecedented interruption of national defense testing and training at an active military facility," would jeopardize overseas operations, and could easily cost millions of dollars per week. (*Id.* (quoting ECF No. 151 at 4).) At the hearing, the United States additionally expressed concern that those who observe air and ground operations at NTTR could pool their individual knowledge and arrive at conclusions that no single observer could reach on her own. (ECF No. 267.) This "mosaic theory of intelligence" does not insulate the United States' argument from scrutiny, but has some persuasive value. *See Berman v. CIA*, 501 F.3d 1136, 1143 (9th Cir. 2007).

Landowners contended at the hearing that the United States' arguments about the burden it will suffer are entirely conclusory. (ECF No. 267.) The Court disagrees. The affidavit provides reasonably specific information about the costs and concerns that entry onto the land would generate. While it is difficult for the Landowners to challenge these arguments because the United States relies on classified information, the outcome of the Court's balancing test did not depend entirely on the burden to the government. As explained *supra*, Landowners also failed to rebut the United States' argument that drilling would not produce relevant evidence. Accordingly, the Magistrate Judge did not err in finding that "on balance, the burden and expense of the discovery sought by [Landowners] far outweigh any potential benefit . . . . [and] is not proportional to the needs of the case." (ECF No. 191 at 5.)

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

///

that they do not warrant discussion as they do not affect the outcome of Landowners' Motion.

It is therefore ordered that Landowner's motion for reconsideration (ECF No. 205) is denied.

DATED THIS 9th day of November 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE